IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| GARELD G. RAY, | ) | Civil No. 04-643-JE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| JO ANNE B. BARNHART, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

    Sharon Maynard
    Swanson, Thomas & Coon
    820 S.W. 2nd Avenue, Suite 200
    Portland, OR 97204
        Attorney for Plaintiff

    Karin J. Immergut
    U. S. Attorney
    Neil J. Evans
    Asst. U.S. Attorney
    1000 S.W. 3rd Avenue, Suite 600
    Portland, OR 97204-2902

    Joanne E. Dantonio
    Special Asst. U.S. Attorney
    Social Security Administration
    701 5th Avenue, Suite 2900 M/S 901
    Seattle, WA 98104-7075
        Attorneys or Defendant

JELDERKS, Magistrate Judge:

Plaintiff Gareld Ray brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits. The Commissioner's decision should be affirmed.

## Procedural Background

Plaintiff filed claims for DIB and SSI on November 30, 2001, alleging that he had been disabled since July 1, 1994, because of back pain, dislocated discs in his back, spinal arthritis, and hip problems. In addition to these problems, he subsequently cited depression with suicidal ideation and inability to sleep as impairments contributing to his alleged disability. The applications were denied initially on June 11, 2002, and were denied upon reconsideration on August 27, 2002.

Based upon plaintiff's timely request, a hearing was held before Administrative Law Judge (ALJ) Tom Tielens on November 6, 2002. Plaintiff, who was represented by counsel, testified at the hearing. Also testifying were Patricia Ayerza, a Vocational Expert (VE); Jim Tinker, plaintiff's

friend; Charlene Ray, plaintiff's wife; and Eileen Graham, plaintiff's mother.

In a decision issued on December 19, 2003, the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act because he had the residual functional capacity (RFC) to perform work that existed in significant numbers in the national economy. That decision became the final decision of the Commissioner on March 1, 2004, when the Appeals Council denied plaintiff's request for review. In the present action, plaintiff appeals from that decision.

Factual Background and Medical Evidence

Plaintiff was born on November 24, 1957, and was 46 years old when the ALJ filed his decision. He completed 11th grade, and has past relevant work experience as a dishwasher, cook, maintenance worker, and landscape worker. He has not performed substantial gainful activity since July 1, 1994.

Plaintiff does not dispute the ALJ's summary of plaintiff's medical record, and his only disagreement with the ALJ's evaluation of his residual functional capacity concerns the ALJ's analysis of the lay witness testimony. Because the parties accept the ALJ's statement of the medical record, I will briefly summarize the ALJ's description of that record below.

FINDINGS AND RECOMMENDATION - 3

Since December 1999, plaintiff has been treated for rectal bleeding, possible chronic obstructive pulmonary disease, chronic back pain, and depression. He had a complete hemorrhoidectomy and protoplasty in April 2000, and sought treatment for tendonitis in January 2001.

Plaintiff has gone to hospital emergency rooms for relief from chronic back pain, and has been treated with narcotic injections. An MRI of plaintiff's lumbar spine performed in July 2001 revealed mild to moderate desiccated disc changes at L5-S1, moderate degenerative facet changes at L5-S1, and mild degenerative facet changes at L4-5. On examination for back pain in December 2001, plaintiff had positive straight leg raising at 45 degrees. He was diagnosed with acute lumbar back strain and was told to return if he experienced symptoms of numbness, weakness, or bowel or bladder incontinence.

An emergency department hospital record dated November 20, 2001, indicates that plaintiff has a "very long history" of chronic narcotic use.

In March 2003, Kimberly Smith-Cupani, M.D., plaintiff's treating physician, reported that plaintiff had told her that he had a disability claim pending for his back, but that she had not certified plaintiff as disabled. She added that plaintiff reported that he could not work because a spinal disease caused him to suddenly collapse, and that he presented with a new complaint of hip pain that he said episodically

"paralyzed" his left side.  Dr. Smith-Cupani reported that plaintiff's physical examination was generally normal, but that plaintiff had an odd gait, and walked without fully extending his knees.  She also reported that plaintiff's MRI did not reveal evidence of an impairment of the lumbar spine that would cause sudden collapse or intractable pain.  Dr. Smith-Cupani stated that she saw no indication that a prescription of narcotic pain medication was warranted.

At the request of the Agency, plaintiff was examined by Donald Ramsthel, M.D., on July 26, 2003.  During the examination, plaintiff complained of low back pain radiating into his left leg and occasionally descending into his toes.  Plaintiff rated his back pain as 5 on a scale of 10, and stated that he had experienced neck pain radiating into his head approximately once per week for two to three minutes during the previous year.  Plaintiff rated his neck pain as 6 or 7 on a scale of 10.  An x-ray of plaintiff's lumbar spine taken on the day of the examination revealed minimal degenerative changes.  Plaintiff's gait was normal, and plaintiff could walk on his heels and toes and do a full squat.  Romberg testing was negative, and straight leg raising was inconsistent at 90 degrees bilaterally in a seated position and at 50 degrees on the right and 60 degrees on the left in a supine position.  The range of motion of plaintiff's

cervical spine was within normal limits, and plaintiff's motor strength, muscle tone, sensation, and reflexes were normal.

Dr. Ramsthel reported that plaintiff's neurological exam was normal, and that plaintiff demonstrated pain behavior and allodynia from C3 to T8 in the midline. He also reported that plaintiff had symptoms related to some degenerative facet disease and some minor degenerative disc disease. There were no significant findings related to plaintiff's complaint of neck pain.

Dr. Ramsthel reported that plaintiff had a long history of tobacco abuse with some pulmonary wheezes, and a history suggestive of chronic obstructive pulmonary disease. Plaintiff reported a history of gastroesophageal reflux disease and a history of nocturnal myoclonus.

Dr. Ramsthel opined that plaintiff retained the ability to lift and/or carry 20 pounds frequently, and that plaintiff could lift and/or carry 50 pounds occasionally. He also reported that plaintiff could stand for two hours, walk for two hours, and sit for up to four hours during an eight-hour workday.

Dr. Yap, a treating physician, noted in January 1999 that plaintiff reported a history of depression. Dr. Yap prescribed Paxil. There is no evidence in the record of any psychiatric hospitalizations or work decompensation caused by mental impairments, and there is no indication that plaintiff

continued to take antidepressant medication or sought counseling related to his mental health.

At the Agency's request, James Bryan, Ph.D., performed a psychological evaluation of plaintiff. In a report dated July 29, 2003, Dr. Bryan noted plaintiff's complaints of low back pain, leg pain, and depression. Plaintiff reported that he drove, though his driver's license had been revoked 10 to 12 years earlier because of unpaid tickets. Plaintiff also reported that no pain medication had been prescribed for him at that time, that he had declined to take antidepressant medication that had been prescribed earlier, and that "crystal meth" was the only thing that relieved his pain. Plaintiff reported a history of alcohol, methamphetamine, cocaine, and marijuana use, and stated that he had last used methamphetamine a day earlier.

Testing indicated that plaintiff had a full scale IQ score of 79, which placed him in the borderline to low average range of intellectual functioning, and Dr. Bryan opined that plaintiff demonstrated overall functioning in the low average intellectual range. Results of a Personality Assessment Inventory were considered to be of reduced validity because of plaintiff's over-endorsement of symptoms. Plaintiff's clinical profile was significant for depressive symptoms, expression of somatic health concerns, and borderline personality/identity problems.

FINDINGS AND RECOMMENDATION - 7

Dr. Bryan diagnosed a pain disorder, associated with psychological factors and a general medical condition; an adjustment disorder; alcohol abuse, current status indeterminate; and borderline and antisocial personality features. He opined that plaintiff's mental impairment did not result in any limitations in plaintiff's ability to understand, remember, and carry out instructions, and did result in mild to moderate limitations in plaintiff's ability to respond appropriately to supervision, co-workers, and pressures in a work setting. Dr. Bryan opined that plaintiff's functioning would improve markedly if plaintiff abstained from drugs and alcohol and participated in mental health treatment that included group counseling and antidepressant medication.

## Hearing Testimony

1. <u>Lay Witnesses</u>

a. <u>Charlene Ray</u>

Plaintiff's wife testified that she had known plaintiff for 10 years, and had been married to plaintiff for three years. Ms. Ray testified that, with respect to his pain, plaintiff had good days and bad days, and that, on good days, he could do some things around the house, such as cleaning and "tinkering" with jewelry. She stated that on his bad days,

FINDINGS AND RECOMMENDATION - 8

plaintiff could only lie in bed or on the couch most of the day. Ms. Ray testified that, during the time that he worked as a dishwasher, plaintiff could only work a day or so at a time, and then he would stay in bed for a couple days because of his back pain. She also testified that plaintiff could sit for about 15-20 minutes before he needed to change positions or get up and move around, and that he could walk for 5 to 10 minutes before he needed to stop or sit.

In response to questioning by the ALJ, Ms. Ray testified that she did not recall plaintiff using drugs during the ten years that she had been with him. She also testified that plaintiff never drank to excess.

b. Eileen Graham

Eileen Graham, plaintiff's mother, testified that plaintiff had lived with her much of his life. Ms. Graham testified that she had seen plaintiff fall to his knees, and had found him at the bottom of her basement stairs where he had fallen. She testified that plaintiff had good days and bad days, and that he could sometimes work for a few days at a time. She added that plaintiff stayed in bed on his bad days.

c. <u>Jim Tinker</u>

Jim Tinker, plaintiff's friend, testified that he had known plaintiff for several years, and had lived with him for about three years, with that arrangement ending about a year before the hearing. Mr. Tinker testified that he saw plaintiff once or twice a week for about an hour at a time, and that he and plaintiff usually walked to the store, which was about 1/8 or 1/4 mile away, or played dice, cards, board games or video games, or watched television together.

Mr. Tinker stated that plaintiff often had difficulty walking to the store because of his back pain, and frequently needed to stretch or rub his back before resuming the walk after he stopped because of pain. He added that plaintiff needed to change his position constantly at home, and that he could not sit for more than an hour.

Mr. Tinker testified that plaintiff had been hired to work with him painting rail cars, but that he had been sent home on the third day because pain had prevented him from working for more than an hour and a half without a half hour break. He added that plaintiff could not maintain the required pace.

d. <u>Vocational Expert</u>

The ALJ posed a hypothetical to the VE describing an individual of plaintiff's age, with plaintiff's education and

FINDINGS AND RECOMMENDATION - 10

work experience, who could lift and carry 20 pounds occasionally and 10 pounds frequently, would require a sit/stand option, could perform simple one, two, and three-step work, could occasionally interact with the public and co-workers, needed to avoid hazards, and could occasionally climb, kneel, crouch, crawl, or stoop.

The VE testified that the individual described could work as a cashier, a surveillance system monitor, and an assembler.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

<u>Step One</u>. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

<u>Step Two</u>. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to

FINDINGS AND RECOMMENDATION - 11

evaluate claimant's case under Step Three.  20 C.F.R.
§ 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational

expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant. <u>Tackett</u>, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. <u>Id.</u>

<u>ALJ's Decision</u>

At the first step of disability analysis, the ALJ found that plaintiff's degenerative disc disease, pain disorder, adjustment disorder, borderline and antisocial personality features, and polysubstance dependence/abuse were severe impairments.

At the second step, the ALJ found that these impairments did not meet or equal the Listings.

At the third step, the ALJ determined that plaintiff's residual functional capacity would allow plaintiff to perform a modified range of light exertion work.

At the fourth step, the ALJ found that plaintiff could not return to his past relevant work.

At the fifth step, based upon the Medical-Vocational Guidelines and upon the VE's testimony, the ALJ found that plaintiff could perform other work that existed in significant numbers in the national economy. The ALJ cited cashier, surveillance system monitor, and assembler positions as examples of jobs that plaintiff could perform.

In his analysis of the evidence that led to these conclusions, the ALJ found that plaintiff's "allegations of disabling pain and inability to work" were "excessive and not fully credible." He also found that the lay witnesses were "generally credible to the extent they report[ed] their observations of the behaviors the claimant demonstrates." He noted, however, that plaintiff's wife's testimony that plaintiff did not use drugs or drink to excess was inconsistent with Dr. Bryan's report that plaintiff "willingly admitted to drug and alcohol abuse." Plaintiff does not dispute the ALJ's finding that he was not wholly credible.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of

not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## Discussion

As noted above, plaintiff does not dispute the ALJ's conclusion that he was not fully credible. He contends,

FINDINGS AND RECOMMENDATION - 15

however, that the ALJ erred in his analysis of the testimony of the lay witnesses, and asserts that "[t]he ALJ's discrediting of the lay witness testimony is inadequate." Plaintiff contends that, when the testimony of the lay witnesses "is properly considered, it establishes that Plaintiff would miss work an average of twice per week." Citing the VE's testimony that a person who misses work two times per month is not competitively employable, plaintiff contends that this action should be remanded for an award of benefits. This is the only basis on which plaintiff challenges the ALJ's decision.

As noted above, the ALJ found the lay witnesses "to be generally credible to the extent they report[] their observations of the behaviors the claimant demonstrates." He added that "as these individuals have no medical expertise, the information they provide is of limited value regarding how the claimant's impairments impact his overall abilities to perform basic work activities at various exertional levels." The ALJ also noted that plaintiff's wife's testimony that plaintiff did not use drugs or drink to excess is contradicted by ample evidence in the record.

Lay testimony concerning a claimant's symptoms or the effects of a claimant's impairments is competent evidence which must be considered. 20 C.F.R. § 404.1513(e)(2) (Commissioner will consider observations by non-medical

FINDINGS AND RECOMMENDATION - 16

sources concerning effect of impairments on claimant's ability to work). An ALJ must take lay testimony into account, "unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)). An ALJ may discount lay testimony because it conflicts with medical evidence. Id. (citing Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984)).

Though he found the lay witnesses to be "generally credible" in their reports of their observations of plaintiff's behavior, it is clear that the ALJ did not consider those observations to be particularly significant, in the context of other evidence, in evaluating plaintiff's capabilities. The ALJ did not set out his reasons for discounting the significance of the lay witnesses' observations in detail. However, it is also clear that the ALJ concluded that the "behaviors the [plaintiff] demonstrates" do not accurately reflect his impairments, and that the lay witnesses' observations were consequently of little use in analyzing plaintiff's residual functional capacity.

As noted above, the ALJ found that plaintiff's own description of his impairments was not credible, and plaintiff does not dispute that finding. The ALJ fully supported his

FINDINGS AND RECOMMENDATION - 17

findings concerning plaintiff's credibility by an extensive examination of evidence in the record.  Under these circumstances, the ALJ's conclusion that lay observations of plaintiff's behavior were not particularly useful or reliable is reasonable.  In addition, the ALJ clearly discounted in part the credibility of plaintiff's wife because her testimony concerning plaintiff's drug and alcohol use was contradicted by substantial evidence in the record.

As noted above, an ALJ may discount lay testimony because it conflicts with medical evidence.  Here, the ALJ's conclusion that the testimony of the lay witnesses was of limited value because these witnesses had no medical expertise must be considered in the context of the ALJ's thorough discussion of the medical record of the treating, examining, and non-examining medical sources.  These medical experts reported plaintiff's complaints of symptoms similar to those testified to by the lay witnesses, but did not conclude that plaintiff's impairments limited him so severely that a finding of disability could be supported.

The ALJ provided sufficient germane reasons for discounting the testimony of the lay witnesses concerning their observations of plaintiff's behavior, and the decision denying plaintiff's application for benefits should be affirmed.

## Conclusion

The Commissioner's decision denying plaintiff's applications for benefits should be AFFIRMED, and a judgment should be entered dismissing this action with prejudice.

## Scheduling Order

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due January 5, 2005. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objection. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or the latest date for filing a response.

DATED this 20th day of December, 2005.

/s/ John Jelderks
John Jelderks
U.S. Magistrate Judge